## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

-----------------------------------------------------------------x
Donna M. Kaelin, :
on behalf of herself and all others similarly situated :     3:09CV-45-S
                                                                  :
                 Plaintiff, :
                                             :
-against- :
                                             :
VERIZON WIRELESS; AT&T INC.; :     **JURY TRIAL DEMANDED**
SPRINT-NEXTEL CORP.; AND T-MOBILE USA :
                                             :
                 Defendants. :
-----------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff brings this antitrust action on behalf of a class of persons or entities who purchased text messaging services from Verizon Wireless, AT&T, Inc., Sprint-Nextel Corp. or T-Mobile USA ("Defendants") at any time from January 1, 2005 to the present (the "Class Period"). Plaintiff, Donna M. Kaelin, on behalf of herself and all others similarly situated, for her complaint against Defendants, upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, alleges the following:

### NATURE OF THE ACTION

1. Defendants contracted, combined, conspired and agreed to fix, maintain and inflate the price of text messaging services and associated fees within the United States in an unlawful restraint of trade.

2. Defendants are the four largest wireless telecommunications companies in the United States servicing more than 224.5 million subscribers and controlling more than 90 percent of the United States cellular phone market.

1

3. Text messaging—also referred to as SMS (Short Message Service)—allows digital mobile phone subscribers to send and receive short messages of 160 characters or less. Text messaging is available on most digital mobile phones and is the most pervasive use of data on mobile phones.

4. During the Class Period, the price of text messaging **doubled** despite the costs associated with delivering text messages not doubling. Text messaging costs remained constant or even may have actually decreased during the Class Period.

5. Since 2005, each Defendant has increased the price of text messages twice—from 10¢ to 15¢ and then again from 15¢ to 20¢—at approximately the same time. See chart in ¶33 below detailing the timing of Defendants' parallel price increases while costs remained the same or may have actually decreased.

6. The volume of text messages in the United States is vast and has increased drastically in recent years from approximately **81 billion** text messages sent or received in 2005 to approximately **383 billion** text messages sent or received in 2007. See http://ctia.org/advocacy/research/index.cfm/AID/10323.

7. As a direct result of Defendants' aforesaid contract, combination, conspiracy and agreement, Plaintiff and Class members have paid supra-competitive prices for text messaging services and associated fees that were higher than they would have paid in the absence of Defendants' unlawful agreement in restraint of trade.

8. Therefore, Plaintiff and the members of the Class were damaged in their property, including by the difference between what they would have paid in a competitive market for Defendants' services and what they did pay due to such unlawful agreement. Given the longstanding nature of Defendants' violation, the structure of the industry, and the likelihood of

continued violation, equitable relief enjoining further violative conduct is appropriate and necessary.

## JURISDICTION & VENUE

9. Plaintiff and Class members bring this suit pursuant to Sections 4 and 16 of the Clayton Act (15 U.S.C. §§15 and 26), to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations of Section 1 of the Sherman Act (15 U.S.C. §1) as alleged herein. In addition, this action is instituted to secure injunctive relief against Defendants to prevent them from further violating Section 1 of the Sherman Act as alleged in this complaint.

10. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §1331 and §1337, and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26.

11. Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§15, 22 and 26, and 28 U.S.C. §1391(b), (c), and (d). Defendants maintain offices, have agents, transact business, or are found within this District. Plaintiff's claims alleged in this complaint arise in part within this District. The interstate trade and commerce described herein is and has been carried out in part within this District. Defendants have sent products in the stream of commerce that have reached this District.

## INTERSTATE TRADE & COMMERCE

12. Beginning at least as early as January 1, 2005, and continuing until the present (the exact dates unknown to Plaintiffs at this time), Defendants engaged in a continuing contract, conspiracy, combination or agreement in restraint of trade in violation of the Sherman Act.

13. During the Class Period alleged herein, Defendants provided billions of dollars of text messaging services to millions of subscribers in a continuous and uninterrupted flow in interstate commerce to customers located throughout the United States, including this District.

14. The Defendants' business activities that are the subject of this action were within the flow of and substantially affected interstate trade and commerce. During the Class Period alleged herein, Defendants' conduct occurred in, affected, and foreseeably restrained the interstate commerce of the United States.

## PARTIES

**Plaintiff**

15. Plaintiff, Donna M. Kaelin ("Plaintiff"), is a Kentucky resident and resides in Utica, Kentucky. Plaintiff purchased text messaging services directly from one or more of the named Defendants and has been injured as a result of the antitrust violations alleged herein.

**Defendants**

16. Defendant Verizon Wireless is a joint venture of Verizon Communications (55%) and Vodafone Group (45%), with its principal place of business located in Basking Ridge, New Jersey. Defendant Verizon Wireless owns and operates the second largest wireless telecommunications network in the United States, with approximately 69 million U.S. subscribers. Based on revenue, Verizon Wireless is the largest American wireless company and largest wireless data provider, with annual revenue of approximately $44 billion in 2007. Throughout the Class Period, Defendant Verizon Wireless sold text messaging services throughout the United States, including this District. On or about June 5, 2008, Verizon Wireless announced it will acquire rural provider Alltel Wireless in a deal valued at

approximately $28.1 billion.[1] With this merger, Verizon Wireless estimates that it will have approximately 80 million wireless subscribers.

17.     Defendant AT&T Inc. is a publicly traded corporation (NYSE: T) organized under the laws of the State of Delaware with its principal place of business located in Dallas, Texas. Defendant AT&T Inc. is the largest provider of wireless service in the United States, with approximately 72 million subscribers.  Defendant AT&T Inc.'s revenue in 2007 was approximately $119 billion.  Throughout the Class Period, Defendant AT&T Inc. sold text messaging services throughout the United States, including this District.

18.     Defendant Sprint-Nextel Corporation is a publicly traded corporation (NYSE: S) organized under the laws of the State of Kansas with its principal place of business located in Overland Park, Kansas.  Defendant Sprint-Nextel Corporation owns and operates the third largest wireless telecommunications network in the United States, with approximately 52 million subscribers.  Throughout the Class Period, Defendant Sprint-Nextel Corporation sold text messaging services throughout the United States, including this District.

19.     Defendant T-Mobile USA is the United States based subsidiary of T-Mobile International AG, based in Germany.  Defendant T-Mobile USA's principal place of business is located in Bellevue, Washington.  Defendant T-Mobile USA is the fourth largest wireless carrier in the United States, with approximately 31.5 million subscribers.  Throughout the Class Period, Defendant T-Mobile USA sold text messaging services throughout the United States, including this District.

---

[1] http://www.nytimes.com/2008/06/06/technology/06phone.html

## CLASS ALLEGATIONS

20. Plaintiff brings this action on behalf of her, and all others similarly situated, pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons and/or entities who directly purchased text messaging services in the United States from any of the Defendants or a subsidiary or affiliate thereof at any time during the period from January 1, 2005 to the present ("the Class"). Defendants, their subsidiaries and affiliates, any co-conspirators and governmental entities are specifically excluded from the Class.

21. The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is in the sole possession, custody, and control of Defendants, Plaintiffs believe that there are millions of Class members.

22. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether Defendants engaged in a contract, conspiracy or combination to raise, fix, stabilize, or maintain the prices of text messaging services in the United States;

    b. whether the alleged contract, conspiracy or combination violated Section 1 of the Sherman Act;

    c. the duration and extent of the contract, conspiracy or combination alleged herein;

    d. whether the Defendants and their co-conspirators took affirmative steps to conceal the contract, conspiracy or combination;

    e. whether each of the Defendants was a participant in the contract, conspiracy or combination alleged herein;

      f.      whether the Defendants' conduct caused the prices of text messaging services to be set at an artificially high and non-competitive level;

      g.      the effect of Defendants' contract, conspiracy or combination upon interstate commerce;

      h.      the appropriate measure of damages; and

      i.      whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief.

23. Plaintiff's claims are typical of the claims of the other members of the Class she seeks to represent because Plaintiff and all Class members are all direct purchasers of text messaging services who paid artificially inflated prices for such services due to Defendants' contract, conspiracy or combination alleged herein.

24. Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel experienced in complex class action and antitrust litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

25. The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

27. The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual Class members may be relatively small; and, therefore, the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## FRAUDULENT CONCEALMENT

28. The running of any statutes of limitations has been suspended with respect to any claims which the Plaintiff and other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants, through various devices and techniques of secrecy, affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

29. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statues of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

30. Defendants provide cellular phone service—which in most cases also includes text messaging service—to more than 90 percent of the United States cellular phone market.

31. In 2007, as indicated above, more than 383 billion text messages were sent or received in the United States.

32. Text messaging files are very small, as the size of text messages are generally limited to 160 characters per message, and therefore cost Defendants very little to transmit. Text messaging files are a fraction of the size of e-mails or music downloads.

33. During the Class Period, each Defendant made the **exact same** two price increases (*i.e.*, from 10¢ to 15¢ and then from 15¢ to 20¢) at approximately the same time while the cost of providing text messaging services remained constant or may have actually been decreasing.

| Defendant | Price Increase From 10¢ to 15¢ | Price Increase From 15¢ to 20¢ |
|---|---|---|
| Sprint-Nextel Corp. | 4th Q 2006 | 4th Q 2007 |
| AT&T Inc. | 1st Q 2007 | 1st Q 2008 |
| Verizon Wireless | 1st Q 2007 | 1st Q 2008 |
| T-Mobile USA | 1st Q 2007 | 3rd Q 2008 |

**United States Senate Inquiry**

34. On or about September 9, 2008, United States Senator Herb Kohl (WI)—chairman of the U.S. Senate's antitrust panel—sent letters to Chief Executive Officers at each Defendant as part of an inquiry into the sharp rise in prices of text messaging services. See http://kohl.senate.gov/~kohl/press/08/09/2008909B29.html

35. In Senator Kohl's letter, he noted, *inter alia*:

    a. "…these increased [text messaging] rates do not appear to be justified by any increases in the costs associated with text messaging services…"

    b. "Since 2005, the cost for a consumer to send or receive a text message over each of your services has increased by 100%. Text messages were commonly priced at 10 cents per message sent or received in 2005. As of the end of the month, the rate per text message will have increased to 20 cents on all four wireless carriers. Sprint was the first carrier to increase the text message rate to 20 cents last Fall, and now all of its three main competitors have matched this price increase."

    c. "What is particularly alarming about this industry-wide rate increase is that it does not appear to be justified by rising costs in delivering text messages."

9

    d. "Also of concern is that it appears that *each of the companies has changed the price for text messaging at nearly the same time, with identical price increases*. This conduct is hardly consistent with the vigorous price competition we hope to see in a competitive marketplace." [emphasis supplied.]

## COUNT I

### *PER SE* VIOLATION OF SECTION 1 OF THE SHERMAN ACT

36. Plaintiff re-alleges and incorporates by reference all of the allegations of this complaint with the same force and affect as if fully restated herein.

37. As more fully set forth above, beginning at least as early as January 1, 2005 (the exact dates being unknown to Plaintiff) Defendants contracted, combined, conspired and agreed to fix, maintain and inflate the price of text messaging services in unreasonable restraint of trade and commerce resulting in a *per se* violation of Section 1 of the Sherman Act.

38. As a direct result of Defendants' contract, combination, conspiracy, or agreement, Plaintiff and the members of the Class have paid supra-competitive prices for text messaging services during the Class Period and have thereby been damaged in their property.

## DEMAND FOR JURY

39. Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants and for the following relief:

A. That the Court declare, adjudge and decree that the Sherman Act claim alleged herein may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

B. That the Court declare, adjudge, and decree that Defendants have committed the violations alleged herein, including a finding that Defendants' conduct herein constitutes a *per se* violation of §1 of the Sherman Act and be enjoined and restrained from continuing the same;

C. That this Court declare that the Plaintiffs and the members of the Class suffered damages as a proximate result of Defendants' conduct;

D. That this Court enter judgment in favor of the Plaintiffs and the Class, jointly and severally, and against the Defendants in an amount to be trebled in accordance with antitrust law;

E. That Plaintiffs and the Class be awarded the cost of the suit, including reasonable attorney's fees, and pre and post judgment interest; and

F. That Plaintiffs and the Class be granted injunctive relief against Defendants' violative conduct and such other and further equitable or other relief as the Court may deem just and proper.

Dated: January 22, 2009

**BISHOP & ASSOCIATES, P.S.C.**

s/ Robert W. Bishop
Robert W. Bishop
Jennifer L. McCarty
P. Stewart Abney
Bishop & Associates, P.S.C.
6520 Glenridge Park Place, Ste. 6
Louisville, KY 40222
Telephone: (502) 425-2600